**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

———————————————————————

JAKE T. DOMINA,

        Plaintiff,

v.                                                                              Case No. 09-CV-756

MITCHELL J. PETERS,

        Defendant.

———————————————————————

## ORDER

Plaintiff Jake T. Domina ("Mr. Domina") filed a post-judgment motion asking this court to set aside a jury verdict and enter judgment as a matter of law for Mr. Domina, pursuant to Federal Rule of Civil Procedure 50(b), or, alternatively, that the court order a new trial pursuant to Rule 59. These motions are the latest filings in a case that arises out of an automobile accident between the two parties on August 13, 2006. For the reasons discussed below, the court denies Mr. Domina's motion for judgment as a matter of law and/or a new trial.

### BACKGROUND

On August 4, 2009, plaintiff Jake T. Domina ("Mr. Domina") filed a complaint in this court alleging he sustained personal injuries and damages as a result of defendant Mitchell J. Peters' ("Mr. Peters") negligence in the operation of his vehicle when the two automobiles driven by the parties collided on Highway 55 in Seymour, Wisconsin. (Docket #1). The case came before the court for trial by jury in November of 2010.

At trial, the parties each presented a different version of the events leading up to the collision. The plaintiff testified that at the intersection of Highway 55 and County Road EE he moved slightly to the right when his passenger told him to turn. (Trial Tr. 13, Nov. 15, 2010) (Docket #55). The plaintiff next claimed that his passenger corrected him, directing him to turn left. (Trial Tr. 13-14) (Docket #55). Mr. Domina testified that as he was in the process of making a standard left turn onto County Road EE, from southbound Highway 55, he was struck by the defendant, who was driving behind him. (Trial Tr. 15) (Docket #55). The plaintiff contended that he never left the southbound lane of Highway 55 at all times prior to making the left turn. (Trial Tr. 44, 55-56) (Docket #55). On the other hand, the defendant testified that the accident took place when Mr. Domina signaled for a right-hand turn, started to turn right onto County Road EE, and then swung back left across Highway 55, colliding with the defendant. (Trial Tr. 8-9) (Docket #56). The jury also heard the recorded deposition testimony of the responding officer to the accident, who compiled data and took measurements at the scene of the collision. Furthermore, the parties submitted in evidence a diagram depicting the accident which was created by the responding officer, photographs of the vehicles post-crash, photographs of the gouge and skid marks left at the accident scene, as well as an aerial photograph of the intersection where the collision occurred. (Docket #49). At the close of evidence, both parties moved for judgment as a matter of law as to the other party's liability pursuant to Fed. R. Civ. P. 50. (Trial Mins. at 6, 8) (Docket #44).

The court did not grant either motion and, thus, submitted the action to the jury. The plaintiff asked the jury to find the defendant negligent in the operation of his vehicle in failing to drive at an appropriate reduced speed when approaching an intersection, failing to control the speed of his vehicle as was necessary to avoid colliding with a vehicle on the roadway, failing to keep a proper lookout, and failing to use ordinary care. On the other hand, the defendant contended he was not negligent in the operation of his vehicle. The defendant asked the jury to find that Mr. Domina was negligent in the operation of his vehicle because the accident took place when Mr. Domina signaled for a right-hand turn, turned right, and then swung back to the left into the oncoming lane of traffic. The defendant asserted that such conduct demonstrated that Mr. Domina failed to keep a proper lookout, failed to yield the right of way, and failed to use ordinary care.

The jury rendered a special verdict finding no negligence on the part of the defendant and 100% negligence on the part of the plaintiff. (Docket #47). As a result of this verdict, plaintiff recovered nothing from the defendant on his claims for injuries and damages sustained as a result of the automobile accident. Following the trial, Mr. Domina filed post-trial motions arguing that the court should set aside the jury's verdict and enter judgment as a matter of law for the plaintiff, pursuant to Rule 50(b), or, in the alternative, that the court should order a new trial pursuant to Rule 59 on the issue of liability. (Docket #52).

## DISCUSSION

I. **Motion for Judgment as a Matter of Law**

A federal standard of review governs Mr. Domina's post-judgment motion even though his claim is premised on an underlying tort governed by state law. *See Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 334 (7th Cir. 1995). It is well-established that a jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict. *Spesco v. General Elec. Co.*, 719 F.2d 233, 237 (7th Cir. 1983) (citing *Lenard v. Argento*, 699 F.2d 874 (7th Cir. 1983)). In simple and straightforward cases, such as the matter at hand, greater deference should be afforded a jury's verdict. *Latino v. Kaizer,* 58 F.3d 310, 314 (7th Cir. 1995) (citing *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3rd Cir. 1991) ("Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations.")).

The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000). To prevail on his Rule 50 motion, Mr. Domina must show that no reasonable jury could have found for the defendant when viewing the evidence in a light most favorable to the defendant. *See Denius v. Dunlap*, 330 F.3d 919, 927-28 (7th Cir. 2003). In ruling on a Rule 50(b) motion, a court must not reweigh the evidence nor substitute its own credibility

determinations for that of the jury. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing*, 530 U.S. at 150-51). Rather, the evidence must be viewed in a light most favorable to the prevailing party, taking into consideration all of the record evidence and drawing all reasonable inferences in the prevailing party's favor. *Id.*; *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001). Although the court should review the record as a whole, it must also disregard evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing*, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, 299 (2d ed. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citing Wright & Miller at 300).

Applying this standard here, it is readily apparent that Mr. Domina is not entitled to judgment as a matter of law. The plaintiff has failed to show that no rational jury could have found for the defendant. Here, the plaintiff's testimony conflicts with the defendant's testimony. The plaintiff's version of events casts the defendant as the negligent actor and vice versa. When a clear conflict in testimony exists, it is within the jury's purview to weigh the evidence. *Spesco v. General Elec. Co.*, 719 F.2d at 237. Therefore, the jury was in the best position to determine which

party's version of events was more credible and supported by the other evidence in the case.

Here, it appears that the record contains sufficient evidence to sustain the jury's verdict finding the plaintiff 100% negligent for the collision. For instance, the plaintiff's testimony that he stayed within the southbound lane at all times prior to making a standard left turn is contradicted by the evidence presented to the jury regarding the point of impact and the position of the cars at the time of the collision. First, there is no dispute that the collision was a side-impact collision rather than a rear-end collision. The jury heard testimony from Sergeant Harry Sokol, formerly of the Outagamie County Sheriff's Department, and the responding officer to the accident, that placed the plaintiff's car at an almost ninety degree angle to Highway 55 at the point of impact. (Sokol Dep. 25:25 – 26:2, Oct. 29, 2010) (Docket #58-4). Furthermore, Sergeant Sokol also stated that, based on data he collected at the accident scene, at the point of impact, the plaintiff's car was mostly in the southbound lane of Highway 55, with approximately two feet of the front of the car in the northbound lane. (Sokol Dep. 24:19 – 25) (Docket #58-4).[1] The defendant

---

[1] Sergeant Sokol's testimony presented evidence that was both favorable and unfavorable to each party. He testified that the plaintiff likely did not make a proper left turn based on the position of his vehicle at the point of impact. (Sokol Dep. 22:4 – 23:20) (Docket #58-4). Sergeant Sokol also testified that the collision would likely not have occurred had the defendant been traveling at a slower speed or had the defendant stopped prior to the point of impact. (Sokol Dep. 24:7 – 13) (Docket #58-4). The jury was made aware that Sergeant Sokol did not conduct an accident reconstruction and that, therefore, his testimony was based purely on the data he compiled at the scene and on his personal observation of the accident scene. Accordingly, the jury was entitled to determine what weight to give Sergeant Sokol's testimony as well as to determine his credibility.

also testified at trial that, though the front of the plaintiff's car was in the northbound lane, much of the rest of the car covered the southbound lane.[2] (Trial Tr. 11-12) (Docket #56). Photographs depicting the skid marks and gouge marks caused by the collision also support Sergeant Sokol's and the defendant's testimony regarding the point of impact and the position of the vehicles. Though the skid and gouge marks suggest that the left front driver's tire of Mr. Peter's truck had edged into the northbound lane at the time of impact, photographs of the vehicles post-accident show that the left front of the truck was not damaged. In fact, the photographs demonstrate that all the other gouge marks are located in the southbound lane. Though neither party introduced evidence regarding the turning radius of the plaintiff's vehicle, the perpendicular position of the plaintiff's car across Highway 55 and the fact that plaintiff's vehicle blocked much of the southbound lane tends to prove that the plaintiff started to turn right before cutting back to the left across Highway 55.[3] The aerial photograph of the intersection also confirms that the turns of the intersection are broadly curved and would have allowed ample space for the plaintiff to maneuver his car into a right turn, and then to swing back to the left in the manner that defendant described during his testimony. Thus, a sufficient amount of the evidence supports the defendant's account of the collision and the conclusion

---

[2]The plaintiff makes much of the defendant's change in testimony from his deposition to trial regarding this point. However, on a Rule 50(b) motion, the court is not allowed to make its own credibility determinations. Thus, it was for the jury to determine how the defendant's change in testimony affected his credibility as a witness.

[3]The southbound lane of Highway 55 measured approximately fifteen feet wide while the plaintiff's vehicle measured approximately sixteen feet long. (Docket #'s 38, 40).

-7-

that the plaintiff, rather than the defendant, was negligent in the operation of his vehicle.

In support of his motion, plaintiff contends that Sergeant Sokol's testimony corroborates plaintiff's testimony because the responding officer stated that the plaintiff's testimony was consistent with the physical evidence. However, the jury was not required to believe any of Sergeant Sokol's testimony. For purposes of this motion, the court must disregard any evidence unfavorable to the defendant that the jury is not required to believe. Therefore, the court will not consider Sergeant Sokol's testimony in this regard as it is unfavorable to the defendant.

In further support of his motion, the plaintiff argues that the defendant's statements regarding the path of the plaintiff's vehicle are physically impossible when viewed in light of defendant's statements regarding his speed and proximity to the plaintiff's vehicle upon approaching the intersection. Specifically, the plaintiff contends that at the speed and distance defendant claimed to be traveling, he would have passed the plaintiff's vehicle in less than one second, before any impact would or could occur. Though he does not cite to any legal authority, it appears that plaintiff is requesting the court to invoke a narrow exception to the general rule which leaves questions of conflicting testimony and credibility of witnesses to the jury. *United States v. Kuzniar*, 881 F.2d 466, 471 (7th Cir. 1989). Only when no reasonable person could believe the testimony of a witness may a district court take the testimony away from the jury. *Id.* Typically, this situation arises where the

testimony contradicts indisputable physical facts or laws. *Id.* This court refuses to apply the "physical facts" exception because this case involves variable factors about which no precise testimony can be given. Other courts faced with automobile accident cases have also refused to apply the exception because an expert's reconstruction or a party's recollection of the "physical facts" of the accident is necessarily based on inaccurate estimates of speed, periods of time, and distances. *See generally Baltimore & O.R.R. Co. v. Daugherty,* 123 Ind. App. 373, 111 N.E.2d 483 (1953); *Granat v. Schoepski*, 272 F.2d 814 (9th Cir. 1959); *Kansas City Public Service Co v. Shephard*, 184 F.2d 945 (10th Cir. 1950); *Jarman v. Philadelphia-Detroit Lines,* 131 F.2d 728 (4th Cir. 1942). In this case, the plaintiff's argument presupposes that the defendant's estimates of his speed and the distance he was from the plaintiff's vehicle immediately preceding the collision are accurate to a mathematical certainty. Yet, the plaintiff overlooks that this testimony was merely the expression of the defendant's best judgment in regard to his speed and distance, and it may have been subject to some error. Therefore, this court is of the opinion that the question of whether defendant's testimony was contrary to physical facts was best left to the jury.

In sum, although some evidence in the record weighs against the defendant, it has not so overwhelmed the evidence favoring the defendant that no rational trier of fact could have found that the defendant was not at all negligent. Accordingly,

because there is sufficient evidence in the record supporting the jury's verdict, the court will not substitute its judgment for that of the jury.

## II.      Alternate Motion for New Trial

A new trial may be granted under Rule 59(a) where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial is not fair to the moving party." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992); *see also Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 480 (7th Cir. 2000) (stating that a new trial should be granted if the verdict is against the "manifest weight of the evidence" or if a prejudicial error occurred). In determining whether to grant a new trial, "a jury verdict must be accorded great deference." *Foster v. Cont'l Can Corp.*, 783 F.2d 731, 735 (7th Cir. 1986). Indeed, the Seventh Circuit has held that "new trials granted because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995) (citing *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3rd Cir. 1991)).

The plaintiff argues that he is entitled to a new trial for three reasons: (1) the verdict was against the great weight of the evidence; (2) defense counsel improperly instructed the jury; and (3) the jury's verdict is unreliable.  Applying the above

standard, the court finds that plaintiff is not entitled to a new trial for any of the foregoing reasons.

First, the plaintiff asserts that, unless the great weight of the evidence supports a liability breakdown of 100% negligence on the plaintiff and 0% negligence on the defendant, the plaintiff is entitled to a new trial. In this case, the verdict as to apportionment of liability is not against the great weight of the evidence. The verdict does not "cr[y] out to be overturned or shock[] our conscience." *Latino v. Kaizer*, 58 F.3d at 315. The plaintiff's version of the collision is supported only by his own testimony and snippets of testimony given by Sergeant Sokol during his deposition. On the other hand, the defendant's version of the collision is supported by the great weight of the evidence. Most notably, the defendant's testimony is corroborated by the photographs of the accident scene and the data and measurements compiled by Sergeant Sokol. Accordingly, the court is not convinced that the jury's verdict as to apportionment of negligence is against the great weight of the evidence.

The plaintiff next argues that defense counsel was allowed to improperly instruct the jury or argue to the jury in his closing argument. Specifically, the plaintiff contends that, during the defense's closing argument, defense counsel should not have been allowed to read excerpts of Sergeant Sokol's deposition testimony concerning the proper way to make a left turn. The plaintiff argues that no witness may provide a legal conclusion, and it was for the court to instruct the jury on how to make a proper left turn. However, the testimony of Sergeant Sokol was not used

in lieu of jury instructions. First, in the court's instructions to the jury, it indicated that the statements and arguments of attorneys are not evidence and should not be considered in reaching a verdict. (Jury Instructions at 3) (Docket #45). The court also instructed the jury on the proper way to make a left turn under Wisconsin law. (Jury Instructions at 16) (Docket #45). Therefore, not only did the court properly instruct the jury on the law, but the court's instruction regarding the import to be given to counsel's arguments guarded against any confusion that may have resulted from defense counsel's reading of Sergeant Sokol's testimony or arguments made during closing argument. Moreover, there is no indication that the recitation of Sergeant Sokol's testimony regarding the proper way to make a left turn caused the jury to misapply the court's instruction.

If the plaintiff's objection is not to defense counsel's recitation of the testimony during closing arguments, but rather to admission of the evidence itself, the court still finds that plaintiff's objection during closing argument was properly overruled. Assuming that Sergeant Sokol's testimony regarding the proper way to make a left turn was inadmissible, plaintiff is estopped from now arguing that it was improperly admitted because he opened the door to that testimony. The Seventh Circuit has stated "[i]t is generally true that when one party opens the door to otherwise inadmissible evidence, the opposing party may be given the opportunity to inquire into those matters itself." *Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (citing *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 627 (7th Cir. 2003);

*United States v. Anifowoshe,* 307 F.3d 643, 649 (7th Cir. 2002) ("This circuit has held on numerous occasions that when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject." (quotations omitted))). This principle is known as the curative admissibility doctrine. *See id; see also U.S. v. Lerch*, 996 F.2d 158, 162 (7th Cir. 1993). In this case, the plaintiff presented Sergeant Sokol's recorded deposition testimony during his case in chief. Furthermore, plaintiff's counsel elicited the testimony at issue during his direct examination of the witness. Therefore, because plaintiff opened the door to this testimony by actually introducing it into evidence, he cannot later argue that defense counsel's reference to the same evidence is barred.[4]

Lastly, the plaintiff contends that the jury's verdict is unreliable for three reasons: (1) the defendant's testimony was impeached at trial and the testimony provided by the defendant is physically impossible; (2) the jury contemplated the issue of awarding the plaintiff damages and its members were concerned with the issue of the source of the money to pay an award for the plaintiff; and (3) the verdict was 100% in favor of the defendant.

With regard to the plaintiff's first assertion, the court has already noted that the jury was entitled to weigh all of the evidence and the credibility of witnesses.

---

[4]Plaintiff also argues that defense counsel's closing argument presented Sergeant Sokol's testimony out of context and subjected the plaintiff to prejudice as a result. However, plaintiff has failed to establish any basis for this assertion of prejudice and, thus, it does not warrant any further consideration by this court.

Plaintiff's second assertion regarding the jury's concern with the source of money to pay an award for the plaintiff is premised on a question asked by the jury to the court during its deliberations. Regarding special verdict question six on the award of expenses, the jury asked "where is the money coming from? Who would be paying it?" (Docket #46). The court responded that it was "unable to provide an answer to this question beyond the court's instructions on the law which are before you." (Docket #46). Plaintiff contends that the evidence, combined with the nature of this inquiry, make it incredible that the jury would "change course" from asking about an award for the plaintiff and then enter a verdict 100% in favor of the defendant. However, the jury was asked to answer the verdict question regarding damages after answering the previous questions regarding liability and apportionment of fault. It was also asked to answer this question regardless of how it answered the previous questions. Under these circumstances, it is just as reasonable to read the jury's question to the court as wondering whether and from whom the plaintiff would receive the damages listed by the jury, even though he was found wholly negligent. The communication could also be interpreted as simple curiosity. In other words, plaintiff's argument in this respect is entirely speculative. The communication, without more, does not warrant a new trial.[5] Lastly, the fact that

---

[5]The plaintiff claims the jury's actions constituted jury nullification, that is, refusal to follow the court's instructions and instead reliance on its own sense of justice. *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983). However, as repeatedly noted by the court throughout this order, the verdict was supported by a substantial amount of the evidence. There is no indication that the verdict amounted to jury nullification.

the verdict apportioned 100% negligence to the plaintiff does not render the verdict unreliable. As the court has previously discussed, the verdict as to apportionment of liability was not against the great weight of the evidence and, consequently, it was also reliable.

Accordingly,

**IT IS ORDERED** that plaintiff's motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59 on the issue of liability (Docket #52), be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 19th day of January, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge